CASE NO. _08 cv 266_____

ATTACHMENT NO. _1_____

EXHIBIT _____

TAB (DESCRIPTION) _____

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RE~~CIV~

MA~~R~~ 2 5 2005

MILTON I. SHADUR
SENIOR U.S. DISTRICT JUDGE

FILED

MAR 2 5 2005
~~MAR 25 2005~~

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Send to |
| ) | Client |
| DOUGLAS M. THIGPEN, ) | on mon |
| Defendant, ) | |

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**ENLARGEMENT TO THE, SUPPLEMENTAL SENTENCING MEMORANDUM,
THE GOVERNMENT HAS NOT MET ITS BURDEN OF PROOF TO ~~ESTABLISH THIGPEN~~
IS A CAREER OFFENDER UNDER ADVISORY GUIDELINE §4B1.1.**

Defendant, Douglas Thigpen("Thigpen"), respectfully submits an

Enlargement to the Supplemental Sentencing Memorandum, objecting to, and moves the

court to strike from the Presentence Report dated December 23, 2004("PSR"), certain

specific prior convictions alleged to constitute predicate career offender offenses

under guideline §4B1.1. Thigpen also moves the court, notwithstanding Almendarez-

Torres v. United States, 523 U.S. 224(1998), and by adopting Apprendi v. New Jersey,

530 U.S. 466, 490 (2000), to strike from the PSR(and not consider in sentencing, all

prior convictions asserted to be career offender predicate offenses under guideline

§4B1.1.

10.         The defendant further asserts that he has the right to a jury

determination of any fact, including the fact of prior convictions, that will

enhance his penalty.

DOCKETED
AUG 1 6 2005

**INDICTMENT**

The SPECIAL AUGUST 2003-1 GRAND JURY charges:

On or about October 25, 2003, at Glendale Heights, in the Northern

District of Illinois, Eastern Division,

A TRUE COPY-ATTEST
MICHAEL W. DOBBINS, CLERK

BY _____
DEPUTY CLERK
U.S. DISTRICT COURT NORTHERN
DISTRICT OF ILLINOIS
DATE AUG 1 7 2005

1

48

## Issue I

This case turns on seemingly simple question of what constitutes a
"crime." Under the Federal Constitution, "the accused" has the right (1) "to be
informed of the nature and cause of the accusation" (that is, the basis on which he
is accused of a crime), (2) to be "held to answer for a capital, or otherwise
infamous crime" only on an  indictment or presentment of a grand jury, and (3) to be
tried by "an impartial jury of the state and district wherein the crime shall have
been committed."Amdts. 5 and 6. See also Art. III, § 2, cl. 3 ("The Trial of all
crimes . . . shall be by jury"). With the exception of the Grand Jury Clause, See
**Hurtado v. California**, 110 U.S. 516, 538 (1884), the Court has held that these
protections apply in state prosecutions, **Herring v. New York**, 422 U.S. 853, 857, and
n. 7 (1975). Further, the Court has held that due process requires that the jury
find beyond a reasonable doubt every fact necessary to constitute the crime. In re
Winship, 397 U.S. 358, 364 (1970).

All of these constitutional protections turn determining which facts
constitute the "crime" - that is, which facts are the "elements" or "ingredients" of
a crime. In order for an accusation of a crime (wheter by indictment or some other
form) to be proper under the common law, and thus proper under the codification of
the common-law rights in the Fifth and Sixth Amendments, it must allege all elements
of that crime; likewise, in order for a jury trial of a crime to be proper, all
elements of the crime must be proved to the jury (and under Winship, proved beyond a
reasonable doubt). See J. Story, commentaries on the Constitution §§ 928-929, pp.
660-662, § 934, p. 664 (1833); J. Archbold, Pleading and evidence in Criminal Cases
*41, *99-*100 (hereinafter Archbold).

Thus, it is critical to know which facts are elements. This question
became more complicated following the Court's decision in **McMillian v. Pennsylvania**,
477 U.S. 79 (1986), which spawned a special sort of fact known as a sentencing
enhancement.

3

sort that we have attempted since McMillan, is necessary. One need only look to the kind, degree, or range of punishment to which the prosecution is by law entitled for a given set of facts. Each fact necessary for that entitlement is an element.

### Issue II

Cases from the founding to roughly the end of the Civil War establish the rule that I have described, applying it to all sorts of facts, including recidivism. As legislatures varied common-law crimes and created new crimes, American courts, particularly from the 1840's on, readily applied to these new laws the common-law understanding that a fact is by law the basis for imposing or increasing punishment is an element.

Massachusetts, which produced the leading cases in the antebellum years, applied this rule as early as 1804, in Commonwealth v. Smith, 1 Mass. *245, and foreshadowed the fuller discussion that was to come. Smith was indicted for and found guilty of larceny, but the indictment failed to allege the value of the stolen goods. The prosecutor relied on this abolition of the traditional distinction to justify the indictment's ommissions. The court, however, held that it could not sentence the defendant for the stolen goods whose value was not set out in the indictment. Id., at *246-*247.

The understanding implicit in Smith was explained in Hope v. Commonwealth, 50 Mass. 134 (1845). Hope was indicted for and convicted of larceny. The larceny statute at issue retained the single-offense structure of the statute addressed in Smith, and establihed two levels of sentencing based on whether the value of the stolen property exceeded $100. The statute was structured similary to the statutes that we addressed in Jones v. United States, 526 U.S. 277, 230 (1999), and, even more, Castillo v. United States, ante, at 122, in that it first set out the core crime and then, in subsequent clauses, set out the ranges of punishments. Further, the statute

5

Similar reasoning was employed by the Wisconsin Supreme Court in
Lacy v. State, 15 Wis. *13 (1862), in interpreting a statute that was also
similar to the statutes at issue in Jones and Castillo. The statute, in a single
paragraph, outlawed arson of a dwelling house at night. Arson that killed
someone was punishable by life in prison; arson that did not kill anyone was
punishable by 7 to 14 years in prison; arson of a house in which no person was
lawfully dwelling was punishable by 3 to 10 years.[fn4]  The court had no trouble
concluding that the statute "creates three distinct statutory offenses," 14 Wis.,
at *15, and that the lawful presence of a person in the dwelling was an element
of the middle offense. The court reasoned from the gradations of punishment: "That
the legislature considered the circumstance that a person was lawfully in the
dwelling house when fire was set to it most material and important, and as greatly
aggravating the crime, is clear from the severity of the punishment imposed."
Id., at *16. The "aggravating circumstances" creates "the higher statutory offense[s]."
Id., at *17. Because the indictment did not allege that anyone had been present
in the dwelling, the court reveresed the defendant's 14-year sentence, but,
relying on Larned, supra, the court remanded to permit sentencing under the lowest
grade of the crime (which was properly alleged in the indictment). 15 Wis., at *17.

Numerous other state and federal courts in this period took the same
approach to determining which facts are elements of a crime. See Ritchey v. State,
7 Blackf. 168, 169 (Ind. 1844)(citing Commonwealth v. Smith, 1 Mass. * 245 (1304),
and holding that indictment for arson must allege value of property destroyed,
because statute set punishment based on value); Spencer v. State, 13 Ohio 401,
406, 408 (1844)(holding that value of goods intended to be stolen is not "an
ingredient of the crime" of burglary with intent to steal, because punishment
under statute did not depend on value; contrasting larceny, in which "[v]alue

7

by law a basis for imposing or increasing punishment comes from early cases addressing recidivism statutes. As Justice Scalia has explained , there was a tradition of treating recidivism as an element. See Almendarez-Torres, 523 U.S., at 256-257, 261 (dissenting opinion). That tradition stretches back to the earliest years of the Republic. See, e.g., Commonwealth v. Welsh, 4 Va. 57 (1817); Smith v. Commonwealth, 14 Serg. & Rawle 69 (Pa. 1826); see also Archbold *695-*696. For my purposes, however, what is noteworthy is not so much the fact of that tradition as the reason for it: Courts treated the fact of a prior conviction just as any other fact that increased the punishment by law. By the same reasoning that the courts employed on Hope, Lacy, and other cases discussed above, the fact of a prior conviction was an element, together with the facts constituting the core crime of which the defendant was charged, of a new, aggravated crime.

The two leading antebellum cases on whether recidivism is an element were Plumbly v. Commonwealth, 43 Mass. 413 (1841), and Tuttle v. Commonwealth, 68 Mass. 505 (1854). In the latter, the court explained the reason for treating as an element the fact of the prior conviction:

> "When the statute imposes a higher penalty upon a second
> and third conviction, respectfully, it makes the prior
> conviction of a similar offense intended to be punished; and
> therefore the fact of such prior conviction must be
> charged, as well as proved. It is essential to an
> indictment, that the facts constituting the offense
> intended to be punished should be averred". Id., at 506.

The court rested this rule on the common law and the Massachusetts equivalent of the Sixth Amendment's Notice Clause. Ibid. See also Commonwealth v. Hayes, 107 Mass. 194, 198 (1871) (reversing sentence, upon confession of

tions that would attach were a "crime" at issue did not apply. Id., at 527; see
Goeller v. State, 119 Md. 61, 66-67, 85 A. 954, 956(1912) (discissing Freeman). At
the same time, the court freely acknowledged that it had "no doubt" of the general
rule, particularly as articulated in Massachusetts, that "it is necessary to allege
the former conviction, in the indictment, when a higher sentence is claimed on that
account". Freeman supra, at 526. Unsuprisingly, then, a leading treatise explained
Freeman as only "apparently" contrary to the general rule and as involving a
"special statue". 3 F. Wharton, Criminal Law §3417, p. 307, n. r (7th rev. ed 1874)
(hereinafter Wharton). In addition, less than a decade after Freeman, the same
Vermont court held that if a defendant charged with a successive violation of of the
liquor law contested identity - that is, wherther the person in the record of the
prior conviction was the same as the defendant - he should be permitted to have a
resolve the question. State v. Hayes, 35 VT. 570, 572-573(1863). (Freeman itself had
antiscipated this holding by suggesting the use of a jury to resolve disputes over
identity. See 27 Vt., at 528). In so holding, Haynes all but applied the general
rule, since a determination of identity was usually the chief factual issue whenever
recidivism was charged. See Archbold *695-696; see also, e.g., Graham v. West
Virginia, 224 U.S. 616, 620-621 (1912) (defendant had been convicted under three
different names).

　　　　An 1872 tretise by one of the leading authorities of the era in
criminal law and procedure confirms the common-law understanding that the above
cases demonstrate. The tretise condensed the traditional understanding regarding the
elements of a crime, to the following: "[T]he indictment must allege whatever is in
law essential to the punishment sought to be inflicted". 1 J Bishop, Law of Criminal
Procedure 50 (2d ed. 1872) (hereinafter Bishop, Criminal Procedure). See id., at 51
([T]he indictment must contain an allegation of every fact which is legally
essential to punishment to be inflicted"); id., § 540, at 330 ([T]he

11

-565 (5th ed. 1872).

The constitutional provisions provides further support, (in his view,) because of the requirements for a proper accusation at common law and because of the common-law understanding that a proper jury trial required a proper accusation: "The idea of a jury trial, as it has always been known where the common law prevails, includes the allegation, as part of the machinery of the trial....[A]n accusation which lacks any particular fact which the law makes essential to the punishment is ...no accusation within the requirements of the common law, and it is no accusation in reason." 1 Bishop, Criminal Procedure § 87, at 55. See id., § 88, at 56 (noting and indictment requirements ensure that before "persons held for crimes ...shall be convicted, there shall be an allegation made against them of every element of crime which the law makes essential to the punishment to be inflicted").

Numerous high courts contemporaneously and explicitly agreed that Bishop had accurately captured the common-law understanding of what facts are elements of a crime. See, e.g., Hobbs v. State, 44 Tex. 353, 354 (1875)(favorably quoting 1 Bishop, Criminal Procedure § 81); Maguire v. State, 47 Md. 485, 497 (1878)(approvingly citing different Bishop treatise for the same rule); Larney v. Cleveland, 34 Ohio St. 599, 600 (1878)(rule and reason for "are well stated by Mr. Bishop"); State v. Hayward, 83 Mo. 299, 307 (1884)(extensively quoting § 81 of Bishop's "admirable treatise"); Riggs v. State, 104 Ind. 261, 262, 3 N.E. 886, 887 (1885)("We agree with Mr. Bishop that the nature and cause of the accusation are not stated where there is no mention of the full act or series of acts for which the punishment is to be inflicted" (internal quotation marks omitted)); State v. Perley, 86 Me. 427, 431, 30 A. 74, 75 (1894)("The doctrine of the court, says Mr. Bishop, is identical with that of reason, viz: that the indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted" (internal quotation marks

13

[19 Tex. Crim. 389]

[19 Tex. Crim. 389]

[19 Tex. Crim. 389], 393 (1885)(not citing Hobbs, but relying on Bishop to reverse 10-year sentence for assault with a bowie knife or dagger, where statute doubled range for assault from 2 to 7 to 4 to 14 years if the assault was committed with either weapon but where indictment had not so alleged).

As in earlier cases, such as McDonald (discussed supra, at 5-6), courts also used the converse of the Bishop rule to explain when a fact was not an element of the crime. In Perley, supra, the defendant was indicted for and convicted of robbery, which was punishable by imprisonment for life or any term of years. The court, relying on Bishop, Hope, McDonald, and other authority, rejected his argument that Maine's Notice Clause (which of course required all elements to be alleged) required the indictment to allege the value of the goods stolen, because the punishment did not turn on value: "[T]here is no provision of this statute which makes the amount of property taken an essential element of the offense; and there is no statute in this State which creates degrees in robbery, or in any way makes the punishment of the offense dependent upon the value of the property taken." 86 Me., at 432, 30 A., at 75. The court further explained that "where the value is not essential to the punishment it need not be distinctly alleged or proved." Id., at 433, 30 A., at 76.

Reasoning similar to Perley and the Texas case is evident in other cases as well. See Jones v. State, 63 Ga. 141,143 (1879)(where punishment for burglary in the day is 3 to 5 years in prison and for burglary at night is 5 to 20, time of burglary is a "constituent of the offense"; indictment should "charge all that is requisite to render plain and certain every constituent of the offense"); United States v. Woodruff, 68 F. 536, 538 (Kan. 1895)(where embezzlement statute "contemplates that there should be an ascertainment of the exact sum for which a fine may be imposed" and jury did not determine

15

Bishop, explained that "[t]he former conviction being a part of the description and character of the offense intended to be punished, because of the higher penalty intended to be alleged." Id., at 442, 13 A., at 786. The defendant had been "charged with an offense aggravated by its repetitious character." Ibid. See Evans v. State, 150 Ind. 651, 653, 50 N.E. 820 (1898). (similar); Shiflett v. Commonwealth, 114 Va. 876, 877, 77 S.E. 606, 607 (1913) similar.

Even without any reliance on Bishop, other courts addressing recidivism statutes employed the same reasoning as did he and the punishment attaches. One of the leading cases was Wood v. People, 53 N.Y. 511 (1873). The statute in Wood provided for increased punishment if the defendant haad previously been convicted of a felony then discharged from the conviction. The court, repeatedly referring to "the aggravated offence," id., at 513, 515, held that the facts of the prior conviction and of the discharge must be proved to the jury, for "[b]oth enter into and make a part of the offence ... subjecting the prisoner to the increased punishment." Id., at 513; see ibid. (fact of prior conviction was an "essential ingredient" of the offense). See also Johnson v. People, 55 N.Y. 512, 514 (1874) ("A more severe penalty is denounced by the statute for a second offence; and all the facts to bring the case within the statute must be [alleged in the indictment and] established on the trial"); People v. Sickles, 156 N.Y. 541, 544-545, 51 N.E. 288, 289 (1898) (reaffirming Wood and Johnson and explaining that "the charge is not merely that the prisoner has committed the offense specifically described, but that, as a former convict, his second ofense has subjected him to an enhanced penalty").

Contemporaneously with the Ney York Court of Appeals in Wood and Johnson, state high courts in California and Pennsylvania offered similar explanations for why the fact of a prior conviction is an element. In People

17

the very offence he is called upon to defend against").

Meanwhile, Massachusetts reaffirmed its earlier decision, striking down, in Commonwealth v. Harrington, 130 Mass. 35 (1880), a liquor law that provide a small fine for a first or second conviction, provided a larger fine or imprisonment up to a year for a third conviction, and specifically providedthat a prior conviction need not be alleged in the complaint. The court found this law plainly inconsistent with Tuttle and with State's Notice Clause, explaining that "the offence which is punishable with the higher penalty is not fully and substantially described to the defendant, if the complaint fails to set forth the former convictions which are essential features of it." 130 Mass., at 36. [fn8]

Without belaboring the point any further, I simply note that this traditional understanding- that a "crime" includes every fact that is by law a basis for imposing or increasing punishment- continued well into the 20th century, at least until the middle of the century. See Knoll & Singer, at searching for the "tail of the dog": Finding "Elements" of Crimes in the Wake of McMillan v. Pennsylvania, 22 Seatle U.L. Rev. 1057, 1069-1081 (1999) (surveying 20th-century decisions of federal courts prior to McMillan); see also People v. Ratner, 67 Cal. App. 2d Supp. 902, 903-906, 153 P. 2d 790, 791-793 (1944). In fact, it is fair to say that McMillan began a revolution in the law regarding the definition of "crime." Today's decision, far from being a sharp break with the past, marks nothing more than a return to the status quo ante- the status quo that reflected the original meaning of the Fifth and Sixth Amendments.

The consequence of the above discussion for our decisions in Almendares-Torres and McMillan should be plain enough, but a few points merit special mention.

First, it is irrelevant to the question of which facts are elements

19

Thus, it is one thing to consider what the Constitution requires the prosecution to do in order to entitle itself to a particular kind, degree, or range of punishment of the accused, see Woodruff, 68 F., at 538, and quite another to consider what constitutional contraints apply either to the imposition of punishment within the limits of that entitlement or to a legislature's ability to set broad ranges of punishment. In answering the former constitutional question, I need not, and do not, address the latter.

Second, and related, one of the chief errors of Almendarez-Torres- an error to which I succumbed - was to attempt to discern wheter a particular fact is traditionally (or typically) a basis for a sentencing court to increase an offender's sentence. 523 U.S., at 243-244; see id., at 230, 241. For the reasons I have given, it should be clear that this approach just defines away the real issue. What matters is the way by which a fact enters into the sentence. If a fact is by law the basis for imposing or increasing punishment - for establish or increasing the prosecution's entitlement - it is an element. (To put the point differently, I am aware of no historical basis for treating as a nonelement a fact that by law sets or increases punishment). When one considers the question from this perspective, it is evident why the fact of a prior conviction is an element under a recidivism statute. Indeed, cases adressing such statutes provide some of a crime. One reason frequently offered for treating recidivism differently, a reason on which we relied in Almendarez-Torres, supra, at 235, is a concern for prejudicing the jury by informing it of the prior conviction. See, e.g., Maguire, 47 Md., at 498; Sickles, 156 N.Y., at 547, 51 N.E., at 290.

Third, I think it is clear that the common-law rule would cover the McMillan situation of a mandatory minimum sentence (in that case, for visible possession of a firearm during the commission of certain crimes). No doubt a defendant could, under such a scheme, find himself sentenced to the same term to

But that scheme exists in a unique context, for in the area of capital punishment, unlike any other area, we have imposed special constraints on a legislature's ability to determine what facts shall lead to what punishment- we have restricted the legislature's ability to define crimes. Under our recent capital-punishment jurisprudence, neither Arizona nor any other jurisdiction could provide- as, previously, it freely could and did- that a person shall be death eligible automatically upon conviction for certain crimes. We have interposed a barrier between a jury finding of a capital crime and a court's ability to impose capital punishment. Whether this distinction between capital crimes and all others, or some other distinction, is sufficient to put the former outside the rule that I have stated is a question for another day.[fn11]

For the foregoing reasons, as well as those given in the Court's opinion, I agree that the New Jersey procedure at issue is unconstitutional.

[fn1] JUSTICE O'CONNOR mischaracterizes my argument. See post, at 5-6 (dissenting opinion). Of course the Fifth and Sixth Amendments id not codify common = law procedure wholesale. Rather, and as Story notes, they codified a few particular common=law procedural rights. As I have explained, the scope of those rights turns on what constitutes a "crime." In answering that question, it is entirely proper to look to the common law.

[fn2] It is strange that JUSTICE O'CONNER faults me for beginning my analysis with cases primarily from the 1840's, rather from the time of the founding. See post, at 5-6(dissenting opinion). As the Court explains, ante, at 478-480, and as she concedes, post, at 525 (O'Connor, J.,dissenting), the very idea of a sentence enhancement was foreign to the common law of the of the founding. Justice O'Connor therefore, and understandably, does not contend that any history from the founding support her position. As far as I have been able to tell, the argument that the fact that was by law the basis for imposing or increasing punishment might not be an

23

State v. Burgett, 22 Ark. 323, 324 (1860) (so reading Smith and questioning its correctness). The Smith court's holding was somewhat unclear because the court did not state whether the case involved a first or second offense – if a first, the court was undoubtedly correct in rejecting the defendant's challenge to the indictment, because there is no need in an indictment to negate the existence of any prior offense. See Burgett, supra, at 324 (reading indictment that was silent about prior offenses as only charging first offense and as sufficient for that purpose). In addition, the Smith court did not acknowledge the possibility of disputes over identity. Finally, the extent to which the court's apparent holding was followed in practice in South Carolina is unclear, and subsequent South Carolina decision acknowledged that Smith was out of step with the general rule. See State v. Parris, 89 S.C. 140, 141, 71 S.E. 808, 809 (1911); State v. Mitchell, 220 S.C. 433, 434-436, 68 S.E. 2d 350, 351-352 (1951).

     [fn6] The gulf between the traditional approach to determining elements and that of our recent cases is manifest when one considers how one might, from the perspective of those cases, analyze the issue in Hobbs. The chapter of the Texas code addressing burglary was entitled simply "of Burglary" and began with a section explicitly defining "the offense of burglary." After a series of sections defining terms, it then set out six separate sections specifying the punishment for various kinds of burglary. The section regarding force was one of these. See 1 G. Paschal, Digest of Laws of Texas, Part II, Tit. 20, ch. 6, pp. 462-463 (4th ed. 1875). Following an approach similar to that in Almendarez-Torres v. United States, 523 U.S. 224, 231-234, 242-246 (1998), and Castillo v. United States, ante, at 124-125., one would likely find a clear legislative intent to make force a sentencing enhancement rather than an element.

     [fn7] The court held that a general plea of "guilty" to an indictment that includes an allegation of a prior conviction applies to the fact of the prior conviction.

of V. See USSG ch. 5, pt. A (Table). Depending upon th eparticular offense, the
sentencing judge may use his or her dicretion to select any sentence within this
range, even if her selection relies upon factual determinations beyond the facts
found by the jury. If the defendant described above also possessed a firearm, the
Guidelines would direct the judge to apply a two-level enhancement under §2D1.1,
which would raise the defendant's total offense level from 28 to 30. That, in turn,
would raise the defendant's eligible sentencing range to 151-to-188 months. That act
of judicial factfinding would comply with the Guidelines and the Sixth Amendment so
long as the sentencing judge then selected a sentence between 151-to-162 months--
the lower number(151)being the bottom of offense level 30 and the higher
number(162)being the maximum sentence inder level 28, which is the upper limit of
the range supported by the jury findings alone. This type of overlap between
sentencing ranges is the rule, not the exception, in the Guidelines as currently
constituted. The defendant did not admit to any prior convictions in which the
goverenment intends the present before the court in order to have the defendant
sentenced as a career offender, and the prior convictions were not charged in the
defendants core indictment in compliance with Apprendi, and the had a right to have
a jury to find those facts beyond reasonable doubt, therefore the court cannot
sentence the defendant as a career offender. The career offender provision, is not a
sentencing statute, but a relevant conduct Sentencing Guideline enhancement
provision 4B1.1, and is outlired in 1B1.3(relevant conduct), which has been found
unconstitutional, and therefore the provision(4B1.1)cannot be appleid in this case.


Wherefore:  For the foregoing reasons, as well as those given in the Court's
opinion, I respectfully ask the Court to sentence the defendant, Mr. Thigpen, to
offense level 19 at category VI, being a term of imprisonment, from 63 to 78 ,
months in prison.

27

*10*

1  history points, and at the same time were to be treated as a

2  component of a career criminal classification.  So I don't know

3  that that's -- unless counsel thinks otherwise, I don't know

4  that we have to say anything more about that.

5              MR. FOX:  I agree with that, but let me just say this

6  as a caveat.  It's not in this case, but it could be.  If it

7  was a felony, which just meant that the statute obviously

8  called for the maximum term of over a year and a day, and the

9  sentence was 17 days as was here, it could still be a felony

10  that went to career offender, but that's not the case in this

11  situation.

12              THE COURT:  True enough.  Yes.  Okay.

13              MR. FOX:  Okay.  So that really covers the one

14  dispute that I think was still out there.  With regard to

15  cooperation, I think it's probably -- it's not a portion of the

16  PSR that I take issue with, and I believe that Mr. Morris takes

17  issue with.  I think that goes more towards his overall

18  sentence that we think is appropriate.  And I don't know if at

19  this time you want me to go there.  I think your Honor is just

20  asking me what are the issues that we are going to be talking

21  about today and what do I need to respond to.

22              I think we are now in agreement that Mr. Thigpen has

23  the predicate offenses to constitute a career offender.  I

24  think Mr. Morris is now agreeing that Mr. Thigpen was the

25  offender in four of the cases that would lead to him being a

11

1 career offender.  So the parties are in agreement with that and
2 obviously he will have a chance to respond if he disagrees with
3 my assessment there.

4          THE COURT:  Okay.  Mr. Morris.

5          MR. MORRIS:  I think, your Honor, I think it would be
6 useful, but let's identify these offenses --

7          THE COURT:  Yes.

8          MR. MORRIS:  -- because there is not that many.  They
9 are discussed at some length in my document, but --

10          THE COURT:  It's --

11          MR. MORRIS:  -- so that we have it clear, because --

12          THE COURT:  It seems to me that I think that's
13 accurate.  If you take a look at the robbery and aggravated
14 battery offense that is found at page 14, it covers lines 354
15 through 360, it seems to me that that qualifies for that
16 purpose, unless counsel thinks otherwise.

17          MR. MORRIS:  Judge, we have said all that we want to
18 say about that in our sentencing memo.  We don't dispute that
19 Mr. Thigpen was involved in the events that are described
20 there.

21          THE COURT:  Well, I understand.  But what I am saying
22 is that not just that he's not disputing that, but rather what
23 it does in terms of qualifying as one of the prior offenses for
24 purpose of Guideline Section 4B1.1(a).

25          MR. MORRIS:  I understand, Judge.  And we are

12

1 back with the difficulty that I started this hearing with.  I

2 think Mr.  Thigpen will -- and I need to ask him this -- I

3 think on the record, acknowledges he is the person who did this

4 and that was convicted of those offenses.

5 [TO DEFENDANT THIGPEN] Is that true?

6          DEFENDANT THIGPEN:    I won't admit to that.  I wanted

7 to file this -- I wanted to adopt Apprendi.  I don't want to

8 admit to the prior convictions.  I don't --

9          THE COURT:  All right.  Well --

10         DEFENDANT THIGPEN:    I am asking that I have a jury

11 determination on that.  I don't want to admit to it.

12         THE COURT:  Well --

13         MR. MORRIS:  Let me add something, although I am not

14 exactly sure what it is going to be.  I advised Mr. Thigpen

15 that there was a difference between taking a legal position

16 which he has done in which he has preserved before this Court,

17 and acknowledging the facts of what occurred is part of an

18 effort is to first of all accept responsibility in connection

19 with pleading guilty.  And I would assume that he would do

20 that.

21         THE COURT:  Whatever Mr. Thigpen's perspective is

22 along those lines, the fact remains that under current law

23 which includes Almendarez Torres, the Court is in a position to

24 make a finding on that score.  And I have reviewed not only the

25 presentence report but also the bulky materials that have been

13

1 supplied in conjunction with the presentence report.  And I

2 find that that offense is one that is included for purposes of

3 the application of career offender determination.

4          MR. MORRIS:  We have nothing to add to that, your

5 Honor.  Thank you.

6          THE COURT:  Now second, since the issue has been

7 raised, if you turn to page 23 at lines 525 to 535, that

8 includes a drug offense as well as aggravated battery to a

9 police officer.  And my determination is that that also

10 qualifies for purposes of career offender determination.

11          And the only thing that I would ask along those lines

12 is whether other than the issue that Mr. Thigpen has

13 identified, and I assume he would want to be consistent in this

14 respect, whether there is any basis for any disagreement with

15 that determination?

16          DEFENDANT THIGPEN:  I don't want to admit to that one

17 neither, your Honor.

18          THE COURT:  I am not asking whether you do or do not.

19 I have got to tell you, you know, in a sense you are threading

20 on thin ice because I am not going to punish for this one, but

21 I have got to tell you, you know I could well say that you are

22 running a risk on acceptance of responsibility when you do

23 that.  And I don't want you be in a position in which you are

24 treated more unfavorably because of that.  And your lawyer has

25 been very careful to try to explain something to you about

14

1 that.

2          DEFENDANT THIGPEN:  Okay.

3          THE COURT:  But I am really asking counsel, I

4 recognize your position, I am asking counsel whether other than

5 the point that Mr. Thigpen has raised whether there is any

6 predicate for disagreement with what I have said?

7          MR. MORRIS:  No, your Honor, there is not.

8          THE COURT:  Okay.

9          The third thing that I wanted to comment on has to do

10 with the Leonard Spears matter and any question that was raised

11 about that.  Now I am not sure whether there is still some

12 because of that mix-up that had to do with that concurrent

13 sentence, which struck everybody as peculiar, whether there is

14 still some kind of contention in that respect that that's not

15 an accountable matter.  But on that score, I went back and I

16 looked at some of the supporting papers.  And I found that

17 included in those was a request for application of the bail

18 funds that were provided, and that those should be returned to

19 counsel.  And that application read, "Leonard Spears, also

20 known as Douglas Thigpen," and it was signed by Mr. Thigpen.

21 And that being true, it seems to me that there is really no

22 room, in candor, for argument that that's not also one,

23 although you only need two and you don't have to go beyond two,

24 my determination is that that also at a minimum is also

25 countable toward the career offender and suffices to kick that

15

1 provision into play.

2          Let me ask once again.  I don't know whether
3 Mr. Thigpen wants in light of the fact of his signature,
4 whether he wants to take the same position on that one.  But I
5 would ask counsel whether you see any predicate for disagreeing
6 with the Court's determination in that respect?

7          MR. MORRIS:  I don't, your Honor.  But could we be
8 clear on which offense it is?  I am embarrassed to say --

9          THE COURT:  All right.  Just a minute.

10          MR. FOX:  I have got the page right here, your Honor.
11 It's page 16 lines 392 through 403.

12          THE COURT:  Right.

13          MR. FOX:  And your Honor, may I ask --

14          MR. MORRIS:  Excuse me.  That's the one that's
15 addressed at length in the supplemental and in my letter to the
16 Court.  And I did go back, and I also found an appearance which
17 was signed by an attorney on behalf of Leonard Spears, also
18 known as Douglas Thigpen.  And so those records on that page 2
19 reflect that it was Mr. Thigpen.  And we in our sentencing memo
20 discussed the facts of this and argue about the relevance of
21 these facts and acknowledges that he was the person involved.

22          MR. FOX:  Your Honor, I hate to do this.  I had a
23 2:30 change of plea that's now been changed to a status before
24 Judge Castillo before this was reassigned at 2 o'clock --
25 before this was rescheduled to 2 o'clock.  Could I have a



# RAVITZ & PALLES, P.C.

**ATTORNEYS AT LAW**

203 NORTH LASALLE STREET · SUITE 2100

CHICAGO, ILLINOIS 60601

GARY RAVITZ
gravitz@ravitzpalles.com

TELEPHONE: (312) 558-1689
FAX: (773) 252-4277

November 19, 2003

Mr. Douglas Thigpen
Reg No 16528-424
MCC-Chicago
71 West Van Buren
Chicago, IL 60605

Dear Mr. Thigpen:

     Just a reminder for you to contact your sister and let her know that I will try to call her. She can also call me at the above number. In this regard, the sooner the better. Once I've spoken with her I may be in a better position to evaluate whether she can really assist you.

     In addition, although I envision efforts to run down your rap sheet for the purpose of determining your criminal history, this process will, as I explained today, take considerable time to complete given that your sheet is a particularly long one, and the potential consequences for you significant. Of course, what's in the past is in the past, and, since your record is not going to suddenly change overnight, our immediate priority ought to involve obtaining your sister's input.

Very truly yours,

Gary Ravitz

GR/wt



# RAVITZ & PALLES, P.C.

### ATTORNEYS AT LAW
### 203 NORTH LASALLE STREET · SUITE 2100
### CHICAGO, ILLINOIS 60601

GARY RAVITZ
gravitz@ravitzpalles.com

TELEPHONE: (312) 558-1689
FAX: (773) 252-4277

December 10, 2003

Mr. Douglas Thigpen
Reg No 16528-424
MCC-Chicago
71 West Van Buren
Chicago, IL 60605

Dear Mr. Thigpen:

Since December 3, 2003, I have been away from work in order to attend to personal business. I do not expect to be back to work again until about December 17th. I write to express my apologies if during this time you have been unable to reach me by telephone or have had a court date cancelled or continued. While any such slight temporary delay has been unavoidable, fortunately it should not have any real effect either upon the outcome or my work in defending you.

Very truly yours,

Gary Ravitz

GR/wt



# RAVITZ & PALLES, P.C.

### ATTORNEYS AT LAW
### 203 NORTH LASALLE STREET - SUITE 2100
### CHICAGO, ILLINOIS 60601

GARY RAVITZ
gravitz@ravitzpalles.com

TELEPHONE: (312) 558-1689
FAX: (773) 252-4277

December 20, 2003

Mr. Douglas Thigpen
Reg No 16528-424
MCC-Chicago
71 West Van Buren
Chicago, IL 60605

Dear Mr. Thigpen:

Please be advised that I spoke to the prosecutor yesterday concerning the possibility that you might still help yourself. Basically, there are 2 options: First, you could *personally* proffer any information you think helpful, but would have to admit the bank robbery; alternatively, *I* could proffer *other* information. In either case, the government would not be committed to deal, and it will require you to show your cards first. This is the standard federal practice. It's entirely possible that after either type of proffer the government could say thanks, but no thanks. If you speak to them directly, you will then merely have succeeded in locking yourself into a further incriminating statement that possibly might be used against you in the future. Since you've already incriminated yourself, and since it appears to me the government is not particularly inclined to deal, if you want to give a proffer, then I ~~recommend~~ suggest it be an attorney proffer.

In this regard, I would not make any further statement about the instant case. If you want to have a trial, you're already at a terrible disadvantage due to your previous post-arrest statement. Don't compound matters now by making any additional statements. Rather, I would propose that we initially limit ourselves to *other matters* about which you might have some knowledge. If the government is interested, be assure, it will let us know. Accordingly, I will come to see you sometime after Christmas. Please have made your decision by then, and, if you do want to proffer, be prepared when I see you to give me a cogent and concise statement about every matter you think might be important. Keep in mind that it's quality, not quantity, that usually counts.

Very truly yours,

Gary Ravitz
GR/wt

# RAVITZ & PALLES, P.C.

**ATTORNEYS AT LAW**

**203 NORTH LASALLE STREET - SUITE 2100**

**CHICAGO, ILLINOIS 60601**

GARY RAVITZ

gravitz@ravitzpalles.com

TELEPHONE: (312) 558-1689

FAX: (773) 252-4277

January 9, 2004

Mr. Douglas Thigpen
Reg No 16528-424
MCC-Chicago
71 West Van Buren
Chicago, IL 60605

Dear Mr. Thigpen:

I have now heard from two prosecutors in response to the attorney proffer. The government wants to meet, and to speak directly with *you* under the protection of a proffer letter. This is a form letter promising, if you tell the whole truth, that nothing you say can be used against you in any trial or sentencing hearing, with 2 exceptions: (1) If the government obtains the same information independently, it may use it; (2) if, in the future, you take a position inconsistent with your proffer, your proffer may be used to impeach you. Since I do not expect you will discuss the pending charge, these exceptions may not mean too much.

A few additional points: The government will *listen* to what you have to say, and evaluate your trustworthiness and also the value of the information *before* it extends any settlement offer. As I've told you before, you proffer on the come. I am informed your proffer session initially would be run by a street agent for ATF, who presumably has specific information --and persons-- in mind. However, as the government is concerned about your credibility and willingness to shift blame, I'm told that, in order to minimize these concerns, you initially will be questioned about *several* people, not knowing who the real target is. Finally, Brandon Fox told me that he will defer to this agent's judgment in terms of whether to actively employ your services. This proffer, were it to occur, would take place on the morning of January 23rd before we appear in court. Please let me know whether I should confirm a meeting for that date.

Very truly yours,

Gary Ravitz

GR/wt

# RAVITZ & PALLES, P.C.

### ATTORNEYS AT LAW
### 203 NORTH LASALLE STREET · SUITE 2100
### CHICAGO, ILLINOIS 60601

GARY RAVITZ
gravitz@ravitzpalles.com

TELEPHONE: (312) 558-1689
FAX: (773) 252-4277

January 27, 2004

Mr. Douglas Thigpen
Reg No 16528-424
MCC-Chicago
71 West Van Buren
Chicago, IL 60605

Dear Mr. Thigpen:

Please be advised that our next meeting may have to take place on February 4th rather than on February 5th in order to accommodate one of the agent's schedules. However, before we return, I think you should know my candid views about how I expect the case may turn out if you elect to cooperate or even if you don't. However, suffice to say preliminarily that it is completely unrealistic to think the government (a) will let you walk away, (b) reduce the case from bank robbery to theft or larceny or (c) ignore the fact that you are a career criminal under the federal sentencing guidelines. If you feel otherwise, then it's probably a waste of time for us to have any further discussion with the government.

The career offender provision remains your obvious -- but unavoidable-- problem. As we've discussed, because the statutory maximum for the offense of bank robbery is 20 years, I have calculated the applicable offense level to be 32, and the applicable criminal history category to be VI, by operation of Guideline 4B1.1(a) and (b). Unfortunately, even if we strap it up and go to trial, the sad truth, as you must know, is that you most certainly will be convicted. If this were to occur, the resulting sentencing range would be 210-262 months, although your maximum sentence actually could not exceed 240 months, i.e., 20 years.

If you simply pleaded guilty, but did not cooperate, you probably can knock your score down 3 levels for acceptance of responsibility. The resulting sentencing range is 151-188 months. Thus, without a downward departure for cooperation, you might still receive a sentence that is greater than 15½ years, but not less than 12½ years.

Given these circumstances, it may yet be in your best interests to cooperate. I reasonably believe we could negotiate one-third off the *low end* in exchange for your cooperation. This means your final sentence would be a bit less than 8½ years. At minimum you'd have shaved 4 years; at best, about seven. Split the difference, and figure that cooperation is probably really worth about 5½.

# RAVITZ & PALLES, P.C.

**ATTORNEYS AT LAW**

**203 NORTH LASALLE STREET · SUITE 2100**

**CHICAGO, ILLINOIS 60601**

GARY RAVITZ                                                        TELEPHONE: (312) 558-1689
gravitz@ravitzpalles.com                                                    FAX: (773) 252-4277

June 2, 2004

Hand-delivered

Mr. Douglas Thigpen
Reg No 16528-424
MCC-Chicago
71 West Van Buren
Chicago, IL 60605

Dear Douglas:

Please find enclosed the "final" version of the plea agreement that has been approved by the United States Attorney. It basically is the same agreement that I've previously presented to you in draft form, but you should nonetheless still carefully review it

¶5 alleges that the bank robbery occurred "by intimidation" rather than the statutory alternative (use of) *force,* a softer statement that we may use in your favor at sentencing. The acknowledgment that TCF was federally insured is merely technical. Finally, note that the slightly modified fact statement in the 2-page attachment *is* the actual final version. It is legal insignificant, yet I enclose both to demonstrate that Fox's bosses in fact have carefully monitored this agreement.

In ¶6(c), the government argues that you are a career offender, but we reserve the right to contest this argument. The government may move for an upward departure based upon your criminal history, but *only* if we make and win the career offender issue, which is highly improbable. In ¶6(e) you will get the 3rd acceptance point, a concrete benefit that will reduce your sentence. Finally, your criminal history is now fully reported. However, per ¶¶6(cc) and 7, we can correct any errors in regard to your background that might surface.

As we've discussed, ¶15 lets us recommend *any* sentence we wish, such as the low end, while the government will recommend a sentence "within" the range. Moreover, per ¶¶8 and 17, the law *requires* that you make restitution.

MAY.11.2004  12:28PM  S ATTORNEY                                    NO.251    P.2/18

**U. S. Department of Justice**

*United States Attorney*
*Northern District of Illinois*

| | | |
|---|---|---|
| *Brandon D. Fox* | *Everett McKinley Dirksen Federal Building* | *(312) 353-5300* |
| *Assistant United States Attorney* | *219 South Dearborn Street, Fifth Floor* | *Direct Line: (312) 353-5277* |
| *Criminal Division* | *Chicago, Illinois 60604* | *Fax:(312) 353-4322* |

May 11, 2004

Gary Ravitz, Esq.
Ravitz & Palles, P.C.
203 N. LaSalle Street
Suite 2100
Chicago, IL 60601

    *Re:*   *U.S. v. Douglas Thigpen*

Dear Mr. Ravitz:

    Please find enclosed a revised draft plea agreement for Douglas Thigpen. This draft plea agreement includes the sentencing recommendation term that we discussed on Friday. It also contemplates that Mr. Thigpen is free to argue that he is not a career offender under the Sentencing Guidelines.

    Please note that this is a draft that has not gone through the necessary approval process. There are some terms of this plea agreement that will probably change during that approval process. Please note also that some of the information on Mr. Thigpen's prior convictions is still left blank. My agent is still in the process of compiling that information. I understand from our discussion on Friday that you may have some information on Mr. Thigpen's criminal history that may change the plea agreement. Please forward that information onto me as soon as possible, so that I may incorporate that information into the plea agreement.

    As we discussed on Friday, I need an answer from Mr. Thigpen on whether he will accept the terms of this draft plea agreement by Friday, May 21, 2004. After that date, I cannot guarantee that the government will be willing to propose the same terms as it has in this agreement.

        Very truly yours,

        PATRICK J. FITZGERALD
        United States Attorney

        BRANDON D. FOX
        Assistant United States Attorney

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

# DRAFT

UNITED STATES OF AMERICA )
                                )
                                )     No. 03 CR 1084
           v.                  )
                                )     The Honorable Milton I. Shadur
DOUGLAS M. THIGPEN )     U.S. District Court Judge

## PLEA AGREEMENT

     This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, DOUGLAS M. THIGPEN, and his attorney, GARY RAVITZ, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 03 CR 1084.

     This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

Individual A and THIGPEN had previously discussed robbing the TCF Bank that was located inside the Jewel grocery store. THIGPEN, at the suggestion of Individual A, walked into the Jewel grocery store and approached the TCF Bank located inside the store. Teller A, an employee of TCF Bank, had been counting money in a cash drawer so that he could put it in the bank's vault. Defendant asked Teller A if he could see the drawer. Teller A told the man that he could not allow him to see the drawer. Defendant responded, "[i]f you don't give me the money, something bad will happen." Defendant was holding a blue Post It Note with the word "ROBBERY" printed on it. Teller A raised the drawer so that it was within defendant's reach. Defendant then reached over the counter with both hands and grabbed $2,204.00 from Teller A's drawer. After grabbing the money, defendant ran out of the grocery store. Once defendant had run out of the grocery store, Individual A drove the Ford Explorer close to defendant. Individual A opened the Ford Explorer's passenger door and defendant jumped into the front passenger seat. Individual A then drove defendant away from the scene. Defendant acknowledges that the deposits of TCF Bank were insured by the Federal Deposit Insurance Corporation.

The foregoing statement of facts is not an exhaustive account of the defendant's knowledge of the events described. Rather, it is submitted solely for the purpose of establishing a factual predicate to the defendant's plea of guilty.

3

Individual A and THIGPEN had previously discussed robbing the TCF Bank that was located inside the Jewel grocery store. THIGPEN walked into the Jewel grocery store and approached the TCF Bank located inside the store. Teller A, an employee of TCF Bank, had been counting money in a cash drawer so that he could put it in the bank's vault. Defendant asked Teller A if he could see the drawer. Teller A told the man that he could not allow him to see the drawer. Defendant responded, "[i]f you don't give me the money, something bad will happen." Defendant was holding a blue Post It Note with the word "ROBBERY" printed on it. Teller A raised the drawer so that it was within defendant's reach. Defendant then reached over the counter with both hands and grabbed $2,204.00 from Teller A's drawer. After grabbing the money, defendant ran out of the grocery store. Once defendant had run out of the grocery store, Individual A drove the Ford Explorer close to defendant. Individual A opened the Ford Explorer's passenger door and defendant jumped into the front passenger seat. Individual A then drove defendant away from the scene. Defendant acknowledges that the deposits of TCF Bank were insured by the Federal Deposit Insurance Corporation.

The foregoing statement of facts is not an exhaustive account of the defendant's knowledge of the events described. Rather, it is submitted solely for the purpose of establishing a factual predicate to the defendant's plea of guilty.



# Memorandum



United States Attorney's Office
Northern District of Illinois

| Subject | Date |
|---|---|
| *United States v. Douglas M. Thigpen*, 03 CR 1084 | September 7, 2004 |

| To | From |
|---|---|
| Lisa Palmer | Brandon D. Fox |
| U.S. Probation Office | Assistant U.S. Attorney |

## GOVERNMENT'S VERSION OF THE OFFENSE

On November 14, 2004, the government filed a criminal complaint against Douglas M.

Thigpen for robbing a bank that was FDIC insured, in violation of Title 18, United States Code,

Section 2113(a). The Grand Jury returned an indictment against Thigpen on December 9, 2003.

The indictment charged that Thigpen, on October 25, 2003, took by force and violence, or by

intimidation, approximately $2,204.00 in United States Currency belonging to and in the care,

custody, control, management, and possession of TCF Bank, the deposits of which were then

insured by the FDIC. Thigpen pled guilty before the Honorable Milton I. Shadur on August 27,

2004 without the benefit of a plea agreement.

## I.    THE OFFENSE

On October 25, 2003, defendant spoke with Individual A about robbing a bank. After

agreeing to commit the crime, defendant, wearing a hooded sweatshirt, walked into a TCF Bank

located in a Jewel grocery store in Glendale Heights. At the time, the deposits of the bank were

insured by the FDIC. Defendant approached Teller A, who was counting the money in a cash

drawer so that he could put it in the vault. Teller A recognized the defendant as one of the bank's customers. Teller A recalled that the defendant had been in the bank a few weeks earlier and had attempted to cash a check on his overdrawn account.

After approaching Teller A, defendant asked to see the cash drawer. Teller A told defendant that he could not allow him to see the drawer. Defendant responded, "if you don't give me the money, something bad will happen." Teller A then noticed that defendant was holding a blue Post-It note with "ROBBERY" printed on it. Teller A froze until another teller told him to give the defendant the money. Teller A raised the drawer so that it was within the defendant's reach. The defendant then reached over the counter with both hands and grabbed money from Teller A's drawer. A later audit showed that defendant stole $2,204.00 from the drawer. After grabbing the money, the defendant turned and ran out the north doors of the grocery store.

An eyewitness Jewel customer saw the robbery as he was existing the grocery store. He told a Jewel employee that the bank was being robbed. At that moment, the defendant exited the Jewel. The employee attempted to pursue the defendant. A Ford Explorer driven by Individual A, however, pulled up next to the defendant. Defendant jumped into the front passenger seat and the Explorer sped off.

## II.    THE PLEA AGREEMENT

There is no plea agreement. Defendant pled guilty pursuant to a plea declaration, where he admitted the elements of the offense and waived his trial rights.

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

June 16, 2004

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

Enclosed is the correspondence file you loaned me containing the letters sent to you by Mr. Ravitz. (I think he has given you in these letters good and accurate advice, and I urge you to read all of his letters again.)

It is not possible to "start over" here, just because you have new counsel. My advice is to salvage what you can of the deal offered. While Mr. Ravitz is correct that it is your decision whether to plead guilty, enter into a plea agreement or go to trial, it would, as you recognize, be beyond foolish in these circumstances not to attempt to negotiate the best plea agreement possible.

I called Brandon Fox a few minutes ago and had a long discussion. The government will not entertain a substantial assistance reduction. As to Smith, they do not, in their judgment, have enough to proceed against him. Nevertheless, the government has given some consideration, in its view, for your proffer by agreeing not to seek an upward departure. (There is case law in the seventh circuit that allows an upward departure where the criminal history points exceed the category VI range of 13 or more points. These cases could result in an increase of one offense level for every 3 points over 15. *United States v. Spears* 159 F.3d 1081(7th Cir. 1998)). The result would be a risk of a sentence at the statutory maximum of 20 years!)

Nevertheless I have made some progress. *If you agree to the proposed plea agreement next week,* the government will, Fox indicated, agree to amend the present draft to provide that <u>the government will make no sentencing recommendation,</u> beyond

recommending that the sentence should be somewhere "within the applicable guideline". (Paragraph 15 of the current draft Plea Agreement now says the government will be free to recommend any sentence within the range "it deems appropriate". This language would almost certainly result in a recommendation of the maximum, which appears to be 188 months.) Under the final plea agreement there will be no upward departure, and the threat to withdraw the timely acceptance reduction (one offense level under Guideline §3E1.1(b)) will go away.

This last concession from the government increases the chance of persuading the court to impose a sentence at or near the bottom of the range. (Note the 151 – 188 month range has a 3-year span). However, **this last concession is subject to your final agreement early next week**. If you agree, then I will so advise Mr. Fox and he will prepare a final Plea Agreement for signature.

Please contact me as soon as you receive this. If I don't hear from you, I'll visit early next week.

Sincerely

Gareth Morris

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

June 23, 2004

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

Following our long meeting today at the MCC, I raised, at your express instruction, seven issues relating to the Plea Agreement. They are listed below, along with the government's final position. (I discussed these with you by phone just now, so this will just be a quick summary):

1. Visit with your mother: Mr. Fox said he'd try to help with this, tough it is a matter within the control of the United States Marshals.

2. The government will not return the "at the suggestion of Individual 'A'" language to the Agreement. Still we can provide a defendant's version of the offense which presents these facts more effectively. I think it would gain nothing to insist upon this, as we will have a chance to say it better and, if we think it will help, to identify "A" by name.

3. The government might agree to recite that you or a relative may give substantial assistance to the government and that this could lead to a Rule 35 motion for a sentence reduction for substantial assistance, but, again, this would only restate Rule 35.

4. The government will not oppose a motion by the defendant to seal the Plea Agreement, but I suggest you consider the final version and decide whether anything would be gained by this. I believe it is silent as to anything that might be troublesome. Mr. Fox, will I think confirm that neither he nor any agent of the



government has any intention of making any contact with the press about you or your case.

5. The main improvement negotiated and still available is that the government will agree not to recommend a specific sentence or range within the applicable Guideline range *if* you are determined to be a career offender. If you make a motion to depart, then the government may oppose that and make any sentencing recommendations it wishes. The government was emphatic that it will not support any other sentencing recommendation (i.e. the bottom or 'the lower half' of the applicable range).

6. The clarification of the appeal waiver as to violations of the Plea Agreement by the government was agreed.

As you instructed, I will advise Mr. Fox that you have made some progress with the individuals you mentioned (I will not name them here); and I will ask him to send the revised Plea Agreement, as it is your intention to accept it.

There will be a change of plea hearing set at a later date and then a 60 day or more delay while the Presentence Report is Prepared. <u>It is very important that you make an effective presentation to the probation officer.</u> I will prepare you for that and be present when he or she interviews you. There will then be follow up interviews with family and possibly others.

I look forward to seeing you on Monday at the status hearing. (I expect that a change of plea hearing will be set in the near future and that not much else will happen on Monday.)

Sincerely

Gareth Morris

## GARETH MORRIS
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

July 14, 2004

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

As promised here is *Blakely* and *Booker*. (The 5th circuit, I understand has now found the guidelines unconstitutional.) Of course, your case is controlled by *Blakely* and *Booker*. These are complicated and difficult times!

Sincerely,

Gareth Morris

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

August 18, 2004

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605                   HAND DELIVERED TO MCC

Dear Mr. Thigpen,

I understand your *Almendarez-Torres* argument. If prior convictions are another element of a crime that must be proved beyond a reasonable doubt, or admitted, then this is a further basis for finding the Guidelines unconstitutional. Still that is not the present state of the law.

The Federal Defender has used "plea declarations" to enter "blind" guilty pleas. This permits the admissions made at the guilty plea to be carefully defined and limited. I have drafted a plea declaration for your review.

I do not think we should tip our hand with Fox that you may not enter into the plea agreement, because we do not want the government filing a superseding indictment before next Wednesday. What they would probably do is add prior conviction facts (and career offender convictions) as sentencing factors or elements of the offense. Recall that Judge Shadur said he saw no need for the government to do that, but clearly you are better off without those "elements" or "sentencing factors" in the indictment.

Mr. Fox has called twice to see what your intentions are. I told him I thought you would plead guilty and that I would let him know once we met. I will plan to see you Monday or Tuesday of next week, to prepare for the change of plea hearing.

You should recognize that there is a downside to a blind plea, with or without the declaration. The government could seek an upward departure at sentencing based on your extensive criminal history and could seek a sentence at the high end of the

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

August 30, 2004

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

Enclosed is a copy of the Plea Declaration which you signed and which the court accepted last week. I will copy the state court materials you provided to me and return them next week. I have read and will keep the Federal Defender pleadings you provided from other cases for reference as we get ready for sentencing.

I thought you did a very good job at the change of plea. You listened to the judge, and gave him a chance to get to know you and your history. This process continues through the probation department interview, the presentence report, our sentencing memoranda and the sentencing hearing.

Sincerely,

Gareth Morris

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

November 17, 2004

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

Here is a recent 7th Circuit opinion on *Almendarez* by Judge Rovner, *United States v. Pittman*, decided November 12th, 2004.

*Booker* will not be decided before the end of this month or into December. So say the blogs.

I will be in touch once I get the PSI report.

I hope this finds you well.

Sincerely,

Gareth Morris

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

December 7, 2004

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

I have the PSI and it appears that you do too.

The more I think about this and research, the more sure I am that you are better served by being sentenced after *Booker* is decided. First, *Almendarez* is binding on the court and you have four qualifying career offender convictions which the court can apply by a preponderance of the evidence. Even if we could attack some, only two need survive. (The four are listed on the next page, extracted from the PSI criminal history summary).

*If* the Guidelines are struck down as unconstitutional, then we have a chance under a discretionary sentencing scheme to paint a more accurate picture of you, rather than having you automatically categorized under the career offender guideline. If they are not struck down, then we are no worse off and can proceed to sentencing.

I will seek a continuance of the December 20th sentencing, and my guess is the government will not oppose it. I'll keep you posted.

Sincerely,

Gareth Morris

## GARETH MORRIS
### ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

January 5, 2005

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

Thanks for your call today. We will file a complete objection to the PSI. Judge Shadur, yesterday, granted the motion I filed on your behalf (enclosed) to delay the time when we will respond to the PSI. It is hard to respond to a presentence report when the rules for sentencing are not known. Facts relevant under one sentencing law, for example, whether a prior offense is a "violent offense" may be irrelevant, or of different import, if there is no career offender provision. So we are better off objecting once we all know the rules for sentencing.

As you know, Judge Shadur has deferred for now your sentencing pending a decision in *Booker*.

Lastly, I will be on vacation from the 12th to the 21st of January. While I am away James Graham (312) 922-3777 will cover this case, should an emergency arise. If there is an urgent matter, please contact him in my absence. (However, do not contact him otherwise; he is a great lawyer and I benefit from his advice (and so do you), but you should not impose upon his time).

Thanks for your New Years wishes. I hope this will be a good year for you too, notwithstanding the obvious challenges we face in your case.

Sincerely,

Gareth Morris

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

DOUGLAS: I AM SENDING THIS AGAIN AS I THINK YOU NEVER RECEIVED IT.
GARETH MORRIS 2-11-05

January 24, 2005

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

Enclosed is <u>United States v. Mark Ranum</u> an early, excellent post-*Booker* decision.
Also enclosed is 28 U.S. C. §3553. The *Booker* majority decision and §3553 (with the
deletion of (b)(1)) defines the rules the judge must follow in sentencing a defendant
within the statutorily prescribed range. There is no need to prove facts beyond a
reasonable doubt any more because the guidelines are not mandatory. The Court said:
If the Guidelines were merely advisory, "..the selection of particular sentences in
response to differing sets of facts ... would not implicate the Sixth Amendment" *Booker*
Stevens majority opinion, at p. 8. The art of this decision is that it gives back to district
Judges discretion and solves the elements versus sentencing facts problem.

Focus on the story we are going to tell the judge as to why he should not
consider you as a career offender under the advisory career offender guideline. Focus
on "the nature and circumstances of the offense and the history and characteristics of
the defendant" §3553(2)( a)( 1).

I will call the Court and Fox and request some time for our response to the PSI
and to prepare for the Sentencing hearing.

Sincerely

Gareth Morris

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

March 30, 2005

Mr. Douglas Thigpen
Reg. No. 16528-424
MCC – Chicago
71 West Van Buren
Chicago, Illinois 60605

Dear Mr. Thigpen,

Enclosed are the Notice of Appeal and Docketing Statement, filed and served today. Also enclosed is your *Apprendi* brief, stamped as received. The transcripts of the change of plea and sentencing have been ordered.

The Probation Department sent a Statement of Correction today and a copy will be coming to you. I have called Lisa Lopez and will follow up to make sure that the references to "threat of death" are removed entirely, if possible. Now it says " the court found that the defendant did not make a threat of death". I'd prefer it to just say no enhancement under the applicable guideline section, without repeating the words.

I have also filed my claim for compensation with the court, as my representation of you ended when I filed the appeal. The Seventh Circuit will appoint a lawyer to handle your appeal if you can not afford one. For the reasons I explained, this is better.

Good luck and best wishes,

Gareth Morris

**GARETH MORRIS**
ATTORNEY
1704 NORTH DAYTON STREET, SUITE 100
CHICAGO, ILLINOIS 60614

March 10, 2005

The Honorable Milton I. Shadur
Senior United States District Judge,
Room 2560
Everett McKinley Dirksen Building
219 South Dearborn Street
Chicago, Illinois 60604

Re: United States v. Douglas Thigpen; 03 CR 1084

Dear Judge Shadur,

Two copies of Mr. Thigpen's Sentencing Memorandum are enclosed, along with
its attachments.

This matter is set for sentencing before you on March 24th, 2005.

Respectfully yours,

Gareth Morris

cc:    Brandon Fox, Esq. AUSA (w/ enclosure)
       ✓ Douglas Thigpen (w/ enclosure)

3-25-05

Mr Thigpen,
          I was before Judge
Shadur on another case. He accepted
this + it is filed.
          I enclose the draft
Notice of Appeal. I'll file this w/
the other necessary forms next week.
          Also, as my work in the
District Court is concluded I will file
my form so that I can be paid.
          I'm glad that you took the
result so well. As I thought, this Judge
is diligent and fair.
          Sincerely

To: Ms. Johanna M. Christiansen, Staff Attorney
    Federal Public Defender's Office
    401 Main Street, Suite 1500
    Peoria Illinois 61602

re: United States v. Thigpen
    Case No. 03 CR 1084

from: Mr. Douglas M. Thigpen
      F.C.I. Oxford

December 7, 2005

Dear Ms. Christiansen,

I recieved the copy of the motion for extension of time, in which you filed on my behalf. I just want you to know that I'm patient, and you can take as long as you need on this thing. My position is stil the same, I should have been given notice of the enhancement, I should have been allowed a jury determination on the prior convictions, and that Almendarez-Torres should be overruled. I also feel that Shadur went beyond the Almendarez-Torres exception, by looking into the record of the convictions to determine facts, such as was the prior conviction violent, or was I the indivisual on one case, or resolving any disputes as a matter of fact, then him making a finding beyond a proponderance of evidence, Shepard says he couldn't look into the record. I strongly believe that USSG 4B1.1 bear exact similarities to the California Habitual criminal Act or the Act in general, and 4B1.1 acts as if its another case all together, so if the government wishes to impose the provision against a person, then that person should be entitled to a jury determination of the prior convictions that-

1

they intend to use as predicate prior conviction offenses for Career Offender purposes, plus notice is required. The prosecution failed to prove the allegations beyond a reasonable doubt without fist taking those procedural steps. See: Monge v. California, 524 US 721 (emphasis added). I also feel that I should have been given 1/3 off at least for my cooperation efforts, I can explain that in more detail if needed to, upon your request. I am very stressed out over this thing, and I really need your help. I know the way 4B1.1 is applied is wrong, and the diference between this and the Almendarez-Torres case, is that his enhancement was noticed in the statute itself, and he admitted the prior convictions, plus he did not argue a 6th Amendment violation. I did not admit any prior convictions and I asked for a jury determination of the prior convictions as well. You can keep the brief short, or you can make it long if we need to, but I don't want to waive the issue, then sometime in the future, Almendarez-Torres is subsequently overruled and then I can't benefit from it, So please file the brief for me.

I have complete faith in you, and I'm grateful for all that you are doing to assit me, and if their is anything whatsoever that I can do to help out, please let me know. I am good guy from a poor family, who had a problem with drugs, which resulted in numerous arrest, and me being pled out time after time, never knowing the future outcome of those decisions.

I am now working in the prison's Law Library as a legal clerk, so I am learning, but I have a lot more to learn. I want to thank you once again, and if you need to speak to me, just send-me a letter and I will call you on the day and time indicated.

2

I hope I don't bother you with these letters, but I need help, and I have a good feeling about this for some reason, well only time will tell. Your further assistance in this matter will be greatly appreciated by myself and my family.

Thank You,

Sincerly,

Douglas M. Trilepen
F.C.I. Oxford
P.O. Box 1000
Oxford, WI. 53952
Inmate No. 53952

"Happy Holidays, to You and Yours"

3

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-1866

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DOUGLAS M. THIGPEN,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 CR 1084—**Milton I. Shadur,** *Judge.*

ARGUED JUNE 9, 2006—DECIDED AUGUST 7, 2006

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

MANION, *Circuit Judge.* In October 2003, Douglas Thigpen robbed a TCF Bank branch in a Jewel grocery store in Glendale Heights, Illinois. He threatened a teller and escaped with $2,204 in cash. Thigpen eventually was caught and pleaded guilty to bank robbery in violation of 18 U.S.C. § 2113(a).

At sentencing, the district court found that Thigpen had three prior convictions that qualified him for the application of the career offender guideline, U.S.S.G. § 4B1.1 (2004). Specifically, the court determined that a 1990 conviction for

No. 05-1866

robbery and a 1999 conviction for aggravated battery constituted crimes of violence for purposes of the career offender guideline, while a 1992 conviction for possession of a controlled substance with intent to deliver comprised a controlled substance offense. Based on the resulting guideline range, the district court imposed a sentence of 151 months' imprisonment. The district court also ordered restitution in the amount of $2,204, payable in sixty days.

Thigpen first challenges the district court's analysis under the career offender guideline, claiming that the court's actions ran afoul of *Shepard v. United States*, 544 U.S. 13 (2005). The government responds that Thigpen waived this challenge when he failed to present it below. Waiver, of course, is the intentional relinquishment and abandonment of a known right, which precludes appellate review. *See United States v. Ortiz*, 431 F.3d 1035, 1038 (7th Cir. 2005). By contrast, forfeiture is simply the failure to make a timely assertion of a right and leads to plain error review. *Id.* We construe waiver principles liberally in favor of a defendant. *See id.*

Thigpen did not waive his *Shepard* argument. In both his sentencing memoranda and at the sentencing hearing, Thigpen concentrated his challenge on a contrary reading of *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), claiming that he was entitled to a jury determination of his prior convictions. Since the Supreme Court held otherwise, the effect of the challenge was to preserve the issue. Thigpen, however, also cited *Shepard* in his supplemental sentencing memorandum, mentioning the diminished reliability of police reports for career offender purposes. While he did not properly develop a *Shepard* argument for the district court's consideration, at no point in the record did Thigpen evince a desire to discard any such argument.

No. 05-1866                                                    3

This is forfeiture, not waiver, and therefore we review for
plain error. *See United States v. Rogers*, 382 F.3d 648, 650 (7th
Cir. 2004).

Nonetheless, Thigpen gains nothing from review of this
issue. Generally, the career offender guideline increases
a felon's offense level if he has at least two prior felony
convictions of either a crime of violence or a controlled
substance offense. U.S.S.G. § 4B1.1(a). The guidelines define
a crime of violence as an offense under federal or state law,
punishable by imprisonment for more than year, that "has
as an element the use, attempted use, or threatened use of
physical force against the person of another." U.S.S.G.
§ 4B1.2(a)(1). A controlled substance offense is an offense
under federal or state law, punishable by imprisonment for
more than a year, "that prohibits the manufacture, import,
export, distribution, or dispensing of a controlled substance
[ ], or possession of a controlled substance [ ], with intent"
to commit one of the listed, prohibited deeds. U.S.S.G.
§ 4B1.2(b).

The assessment of whether a prior offense qualifies for
a recidivist enhancement, such as the career offender
guideline, depends on the crime of conviction, not on
what the defendant actually did while committing the
crime. *See United States v. Lewis*, 405 F.3d 511, 513-14 (7th
Cir. 2005). When determining whether a prior convic-
tion falls into one of the enhancement categories, a district
court may only consider "conclusive records made or used
in adjudicating guilt." *Shepard*, 544 U.S. at 20-21[1]. The
district court is "limited to examining the statutory defini-

---

[1] Although the *Shepard* decision arose under the Armed Career
Criminal Act, we have subsequently applied its holding to the
career offender guideline. *See United States v. McGee*, 408 F.3d 966,
988 (7th Cir. 2006).

tion, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding made by the trial judge to which the defendant assented." *Id.* at 16. A district court cannot try to supplement its knowledge about the actual crime of conviction with facts from other sources for purposes of its enhancement determination. *See, e.g., United States v. Hagenow,* 423 F.3d 638, 644 (7th Cir. 2005). To apply a recidivist enhancement, therefore, a district court may go no further than documents directly establishing what the conviction is. *See United States v. Townsend,* 419 F.3d 663, 664 (7th Cir. 2005).

On appeal Thigpen argues that the district court erred by considering the pre-sentence report (the "PSR"), which in turn relied on police reports and other background documents, in drawing its conclusions about the prior convictions. Thigpen's argument is misplaced. As an initial matter, nothing in the record suggests that the district court relied on the PSR when drawing its conclusions about the nature of the prior offenses. In any event, the district court did not violate *Shepard.* The district court referenced three prior crimes, and each qualifies on its face for one of the two categories for the career offender enhancement. The comment to the "crime of violence" definition in the guidelines specifically notes that robbery is a crime of violence, U.S.S.G. § 4B1.2 cmt. n.1 (2004), and we have stated that "robbery always is a 'crime of violence.' " *Lewis,* 405 F.3d at 515. Next, under Illinois law, aggravated battery involves the use or threatened use of force against another person and is punishable by imprisonment for more than a year. 720 ILCS 5/12-4. This crime also meets the requirements for a crime of violence. Finally, the conviction for possession with intent to deliver under 720 ILCS 570/401 constitutes a controlled substance offense, as it involves "possession of a controlled substance with intent to . . . distribute[ ] or

No. 05-1866                                                          5

dispense[ ]" and is punishable by imprisonment for more than a year. U.S.S.G. § 4B1.2(b). Thigpen does not claim that any of this information was inaccurate. The district court, therefore, did not have to go beyond the actual convictions to find additional facts (about what Thigpen actually did) for its enhancement determination. *See United States v. Carpenter*, 406 F.3d 915, 917 (7th Cir. 2005). While the PSR certainly contained more information than merely the crimes of conviction, this would only be a problem if the district court used these facts to establish a crime of violence or controlled substance offense. Here the properly considered records established that the prior convictions constituted a crime of violence or controlled substance offense. Thus, the district court did not err when applying the career offender guideline.

Thigpen also claims that the district court erred by failing to set a restitution schedule. Thigpen did not object to the restitution order, so we review for plain error. *See United States v. Pandiello*, 184 F.3d 682, 687 (7th Cir. 1999). To establish plain error, Thigpen has to demonstrate a clear error that affects a substantial right and, moreover, impacts "the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 733-34, 736 (1993).

The district court ruled that the entire amount of the restitution was due and payable sixty days after sentencing. This court has recently emphasized that the statutory restitution scheme requires a sentencing court to set a payment schedule, taking into account the defendant's financial resources, obligations, and projected earnings. *See United States v. Day*, 418 F.3d 746, 761 (7th Cir. 2005); 18 U.S.C. § 3664(f)(2). In *Day*, we explicitly opposed a district court's attempt to minimize its responsibility to set a

restitution schedule by ordering "immediate" payment. *Day*, 418 F.3d at 761. Such an arrangement effectively transfers the district court's responsibility for setting a restitution schedule to the probation office, which is inconsistent with the statute. *See id.*; *see also Pandiello*, 184 F.3d at 688. The district court's restitution order in the present case, which does no more than set payment in sixty days, has precisely this defect, and once again transfers authority properly employed by the court to the probation office. Such delegation of power from the district court to the probation office " 'deprives the defendant of a substantial right' and constitutes 'a serious structural defect' affecting the integrity of the judicial proceedings." *Pandiello*, 184 F.3d at 688 (quoting *United States v. Mohammad*, 53 F.3d 1426, 1438-39 (7th Cir. 1995)). This constitutes plain error.

While the district court properly followed *Shepard* when applying the career offender guideline, the district court did not apply proper procedures in its restitution order. We, therefore, AFFIRM Thigpen's sentence, but VACATE the restitution order and REMAND for the imposition of a proper restitution schedule consistent with our opinion in *Day*.

No. 05-1866                                                                    7

A true Copy:

    Teste:

                    _____

                    *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*

(Rev. 12/03) Amended Judgment in a Criminal Case
Sheet 1

(NOTE: Identify Changes with Asterisks (*))

# UNITED STATES DISTRICT COURT

Northern _____ District of _____ Illinois

UNITED STATES OF AMERICA
### V.
### DOUGLAS THIGPEN

**AMENDED JUDGMENT IN A CRIMINAL CASE**

Case Number:      03 CR 1084-1
USM Number:     16528-424

**Date of Original Judgment:** 3/29/05
(Or Date of Last Amended Judgment)

Gareth G. Morris
Defendant's Attorney

**Reason for Amendment:**

☐ Correction of Sentence on Remand (18 U.S.C. 3742(f)(1) and (2))

☐ Reduction of Sentence for Changed Circumstances (Fed. R. Crim. P. 35(b))

☐ Correction of Sentence by Sentencing Court (Fed. R. Crim. P. 35(a))

☐ Correction of Sentence for Clerical Mistakes (Fed. R. Crim. P. 36)

☐ Modification of Supervision Conditions (18 U.S.C. §§ 3563(c) or 3583(e))

☐ Modification of Imposed Term of Imprisonment for Extraordinary and Compelling Reasons (18 U.S.C. § 3582(c)(1))

☐ Modification of Imposed Term of Imprisonment for Retroactive Amendment(s) to the Sentencing Guidelines (18 U.S.C. § 3582(c)(2))

☐ Direct Motion to District Court Pursuant ☐ 28 U.S.C. § 2255 or
  ☐ 18 U.S.C. § 3559(c)(7)

X Modification of Restitution Order (18 U.S.C. § 3664)

**THE DEFENDANT:**

X pleaded guilty to count(s)  one (1)

☐ pleaded nolo contendere to count(s) _____
  which was accepted by the court.

☐ was found guilty on count(s) _____
  after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. 2113(a) | Bank Robbery | 10/25/03 | 1 |

The defendant is sentenced as provided in pages 2 ___ 2 ___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984. Other than the amendments or modifications stated in this judgment, the judgment entered ___ March 29, 2005 ___ is to stand (see attachment).

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____ ☐ is ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

January 26, 2007
Date of Imposition of Judgment

_Signature_
Signature of Judge

Milton I. Shadur, Senior U.S. District Judge
Name and Title of Judge

DEC 3, 2007
Date

AO 245C    (Rev. 12/03) Amended Judgment in a Criminal Case
            Sheet 6 — Schedule of Payments

(NOTE: Identify Changes with Asterisks (*))

Judgment — Page __2__ of __2__

DEFENDANT:      **Douglas Thigpen**
CASE NUMBER:    03 CR 1084-1

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties shall be due as follows:

A    ☐    Lump sum payment of $ _____ due immediately, balance due

    ☐ not later than _____ , or

    ☐ in accordance with ☐ C,   ☐ D,   ☐ E, or   ☐ F below; or

B    ☐    Payment to begin immediately (may be combined with   ☐ C,     ☐ D, or   ☐ F below); or

C    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D    ☐    Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of  $ _____ over a period of
    _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a
    term of supervision; or

E    ☐    Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F    2    Special instructions regarding the payment of criminal monetary penalties:

    Ten percent (10%) of the defendant's earnings at the FCI are to be applied towards the outstanding restitution obligation. The
    institution will withhold the actual payments until the amount accumulated reaches $50.00. If the outstanding restitution
    obligation is not paid in full during the term of incarceration, ten percent (10%) of the defendant's earnings during the
    supervised release term will be withheld and applied to the restitution.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due
during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons'
Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐    Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Joint and Several Amount, and
    corresponding payee, if appropriate.

☐    The defendant shall pay the cost of prosecution.

☐    The defendant shall pay the following court cost(s):

☐    The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal,
(5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

**William K. Suter**
Clerk of the Court
(202) 479-3011

January 8, 2007

Mr. Jonathan E. Hawley
401 Main Street
Suite 1500
Peoria, IL  61602

Re:  Douglas M. Thigpen
     v. United States
     No. 06-8206

Dear Mr. Hawley:

The Court today entered the following order in the above-entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

William K. Suter, Clerk